ISAAC DEJESUS *v.* CRAFTSMAN MACHINERY
COMPANY ET AL.
(5468)

BIELUCH, STOUGHTON and NORCOTT, Js.

Argued April 21—decision released October 4, 1988

*Leo Gold,* for the appellant (plaintiff).

*Edward P. McCreery III,* for the appellee (named defendant).

*Daniel E. Ryan III,* for the appellee (defendant Beaverite Products, Inc.).

BIELUCH, J. The plaintiff instituted this action seeking damages for injuries he suffered while operating a crease and punch machine, also known as a platen press. Judgment was rendered for the defendants in accordance with the jury verdict, and the plaintiff appealed. The plaintiff claims that the trial court erred (1) in failing to charge the jury that statements contained in pleadings filed by the defendants against each other could be considered as admissions, (2) in including only two of the three separate theories for imposing liability claimed by the plaintiff in the interrogatories submitted to the jury, (3) in limiting the plaintiff to the introduction of a supplemental answer to an interrogatory without permitting introduction of the original answer, (4) in refusing to grant the plaintiff's motion to set aside the verdict and find that the interrogatory answers constituted the basis for imposing liability on the defendant Craftsman Machinery Company, and (5) in concluding that the defendant Craftsman Machinery Company produced sufficient evidence to overcome the presumption of proximate cause where it had failed to provide warnings on its crease and punch machine. We find no error.

The plaintiff, who crushed his left hand and, in particular, his left thumb, when he caught his hand in a crease and press machine in the course of his employment, brought an action against the named defendant, Craftsman Machinery Company (Craftsman), the corporation that sold the machine to the second defendant involved in this appeal, Beaverite Products, Inc., (Beaverite).[1] The plaintiff's product liability action also raised claims of liability based on not only strict tort liability, but also negligence, as well as failure to warn or instruct, and breach of implied warranty. Craftsman answered this complaint and, in a special defense filed

---

[1] Beaverite is affiliated with East Coast Loose Leaf, Inc., the plaintiff's employer, not a party to this action.

with its answer, alleged that the plaintiff was contributorily negligent in causing his injuries. The plaintiff denied this allegation.

During the pendency of the plaintiff's action, Craftsman sought to implead Beaverite.[2] The motion was granted and Craftsman subsequently filed a third party complaint which alleged that, if Craftsman was found liable to the plaintiff, Beaverite would be liable to Craftsman on the grounds that Beaverite intentionally failed to purchase certain safety controls available to it, that Beaverite was in control of the machine and any negligence or responsibility on the part of Craftsman was passive and the negligence and responsibility of Beaverite was active, and that Beaverite should indemnify Craftsman for any losses or damages.

The plaintiff thereafter amended his complaint to assert a claim against the third party defendant, Beaverite. This additional count, brought against Beaverite as the distributor of the machine, raised claims of strict product liability, negligence, failure to warn or instruct, and breach of implied warranty. Beaverite filed an answer to this amended complaint, and also interposed the special defense that the plaintiff's own negligence contributed to his injuries. The plaintiff denied the allegation contained in this special defense.

A revised third party complaint was filed by Craftsman in response to a request by Beaverite. This complaint specified that the failure of Beaverite to purchase safety controls or devices for the crease and punch machine constituted negligence on its part and, further, that this negligence was the direct, immediate cause of the plaintiff's accident and resulting injuries.

---

[2] The third party claim filed by Craftsman also sought to implead Thomson National Press Company (Thomson), the original manufacturer of the machine. Before the trial was concluded, however, all claims against Thomson were withdrawn and it is not a party to this appeal.

Beaverite subsequently denied the allegations of this revised third party complaint, and filed a counterclaim against Craftsman which sought indemnification, claiming that Beaverite had relied on the expertise of Craftsman when purchasing the crease and punch machine, and that Craftsman, which was in exclusive control of the refurbishing and conditioning of the machine, had negligently sold a defective machine, had failed to install safety devices, and had failed to warn the plaintiff's employer, East Coast Loose Leaf, Inc., regarding the machine's defective condition. Beaverite also filed a revised answer and special defenses to the plaintiff's amended complaint, adding the special defense that the plaintiff's claims were barred by the statute of limitations. Craftsman filed an answer to the counterclaim interposed by Beaverite, and, by way of special defenses, alleged that Beaverite was negligent in failing to exercise reasonable care to protect the use of the crease and punch machine, and that Beaverite's agents and employees had removed the hand safety guard on the machine. Beaverite denied these allegations.

The plaintiff filed a final amended complaint,[3] and the matter went to trial. On August 7, 1986, the jury

[3] The relevant allegations of the final amended complaint were:

"FIRST COUNT (As to Craftsman Machinery Company) . . .

5. The defendant is liable and legally responsible to the plaintiff for the plaintiff's injuries caused by said cutting and creasing machine by virtue of Public Act 79-483 (Products Liability Law) in one or more of the following respects:

a. In that said cutting and creasing machine was in a defective and unreasonably dangerous condition and could not be used without unreasonable risk of injury to the plaintiff because said cutting and creasing machine was sold by and delivered by defendant without the hand safety guard designed and produced by the manufacturer for the prevention of injuries of similar type as plaintiff was caused to suffer.

b. In that the defendant failed to warn or instruct Beaverite Products, Inc., the purchaser of the cutting and creasing machine, East Coast Loose Leaf, Inc., plaintiff's employer, or plaintiff that the absence or removal of

returned a verdict in favor of the defendants. This verdict was based on interrogatories submitted by the court to the jury.[4] The plaintiff moved that the court

the hand safety guard from said machine created a dangerous condition for its operator.

c. In that the defendant was negligent in that it failed to adequately inspect and test said cutting and creasing machine prior to marketing it because if it had, it would have discovered that the absence of a safety guard would create a dangerous condition for the machine operator; in that it failed to adequately refurbish said cutting and creasing machine prior to marketing it so that the safety guard could not be removed; in that it knew or should have known of the dangerous character of said cutting and creasing machine as more particularly set forth in this complaint, yet placed it on the market and sold the said cutting and creasing machine for substantial profit.

d. In that the defendant breached its implied warranties in that said cutting and creasing machine was not of merchantable quality and fit for its intended use all as more particularly set forth in the complaint.

e. It knew or should have known that the machine could be equipped with various OSHA controls and other safety devices but failed to purchase or place said controls or devices on the machine.

6. The cutting and creasing machine was not altered or modified in any way by the plaintiff or third parties from the condition it was sold by the defendant, Craftsman Machinery Company, or distributed by the defendant Beaverite to its affiliate. . . .

SECOND COUNT AS TO BEAVERITE PRODUCTS, INC. . . .

4. Said injuries were proximately caused by the negligence of the defendant in that:

a) Said cutting and creasing machine was in a defective and unreasonably dangerous condition and could not be used without unreasonable risk of injury to the plaintiff because said cutting and creasing machine was distributed by defendant without the hand safety guard designed and produced by the manufacturer for the prevention of injuries of similar type as plaintiff was caused to suffer.

b) The defendant failed to warn or instruct East Coast Loose Leaf, Inc., plaintiff's employer, or plaintiff that the absence or removal of the hand safety guard from said machine created a dangerous condition for its operator.

c) It failed to adequately inspect and test the machine prior to sending it to its affiliate.

d) It knew or should have known that the aforementioned cutting and creasing machine could be equipped with various OSHA controls and other safety devices but failed to purchase or place said controls or devices on the machine. . . ."

[4] The following interrogatories were answered by the jury:

"THE COMPLAINT:

(1) set aside the verdict as to both defendants, (2) render judgment as to liability against the defendant Craftsman, and (3) order a new trial as to the defendant Craftsman limited to the amount of damages. The motion was denied, and this appeal from the judgment rendered on the verdict followed.

## I

The plaintiff claims first that the trial court erred in failing to charge the jury that the various allegations contained in the third party pleadings filed by the two defendants against each other could be deemed as admissions against the respective defendants. This issue raises the question of whether statements made in the context of a third party action can be used as admissions by the plaintiff in the original action. We hold that they cannot.

As to paragraph 5a of the First Count against Craftsman Machinery:

Question 1: Did the plaintiff prove that the machine was in a defective condition unreasonably dangerous for use by the plaintiff?

Answer: Yes X____ No _____

Question 2: Did the plaintiff prove that when the machine left the possession of this defendant Craftsman that it was in said defective condition?

Answer: Yes _____ No X____

Question 3: Did the plaintiff prove that the defective condition of the machine was a proximate cause of (that is, a substantial factor in causing) the accident?

Answer: Yes X____ No _____

As to paragraph 5b of the First Count against Craftsman:

Question 4: Did the plaintiff prove that the machine was defective in that adequate warnings were not provided?

Answer: Yes X____ No _____

Question 5: Did the plaintiff prove that the failure to give an adequate warning by the defendant was a proximate cause of (that is a substantial factor in causing) the injuries to the plaintiff?

Answer: Yes _____ No X____

\* \* \*

AS TO THE SECOND COUNT AGAINST
BEAVERITE PRODUCTS, INC.

Question 10: Did the plaintiff prove that the defendant Beaverite was negligent in one or more ways specified in the complaint?

Answer: Yes _____ No X____ "

It is a general rule that "statements in withdrawn or superseded pleadings, including complaints, may be considered as evidential admissions by the party making them, just as would any extrajudicial statements of the same import." *Dreier* v. *Upjohn Co.,* 196 Conn. 242, 244, 492 A.2d 164 (1985). Given that the statements have some probative value, the circumstances under which they are made, as with any other "admission," go to the weight to be accorded the statements, rather than to their admissibility. Id., 247; *Slitham* v. *LeWare,* 134 Conn. 681, 684, 60 A.2d 658 (1948); see also C. Tait & J. LaPlante, Connecticut Evidence (2d. Ed.) § 6.7.1, p. 134. The exclusion of "admissions contained in earlier pleadings would make the filing of a complaint serve merely as notice of an intent to investigate the cause of an injury rather than as a 'plain and concise statement of the material facts on which the pleader relies' to invoke the court's jurisdiction. Practice Book §§ 108, 131. Such a result would extend the effect of our liberal pleading rules far beyond the policy supporting them." *Dreier* v. *Upjohn,* supra, 247.

Statements contained in third party pleadings are an exception to this general rule. Such statements are made, arguendo, to discuss the hypothetical legal consequences if a certain fact should be determined by the trier, and are not admissions of the facts in question. The third party complaint of Craftsman, and the counterclaim filed in response by Beaverite, claimed indemnification if a verdict in the plaintiff's favor were reached by the jury. The allegations presented in the third party pleadings as to the condition of the crease and punch machine, and the lack of a hand safety guard, are not probative on the underlying issue in the plaintiff's action of whether this machine was dangerous and defective due to the missing guard. Clearly, the allegations contained in the third party pleadings were contingent and premised on the jury's finding against

either defendant on the initial question of whether the machine was in a defective and unreasonably dangerous condition when it was sold and distributed due to the lack of a hand safety guard. Third party pleadings are a tool for the assistance of the trier of fact in the determination of ultimate responsibility, if any, for proven liability and damages under the plaintiff's complaint. The cause of action alleged in the pleadings between the interpleading party and interpleaded party is separate from, and not probative of, the proof of the plaintiff's cause of action which must stand on its own facts within the allegations of his complaint.

Both General Statutes § 52-102a and Connecticut Practice Book § 117 provide that a defendant in any civil action may serve, as a third party plaintiff, a complaint upon any person not a party to the action *"who is or may be liable* for all or part of the plaintiff's claim."* (Emphasis added.) Such a third party defendant impleaded by the original defendant thereafter has all the remedies available to an original defendant, including the right to assert a counterclaim against the third party plaintiff. General Statutes § 52-102a (b).

To allow the admission into evidence of statements by the third party plaintiff on his cause of action contained in third party pleadings would defeat the purposes of these procedural devices, which include, as is relevant to this case, the acceleration of the accrual of the right to assert a claim against an impleaded party. *Schurgast* v. *Schurgast,* 156 Conn. 471, 484, 242 A.2d 695 (1968). This would be true in an indemnity obligation, where a necessary element of a claim for indemnification is an allegation that the indemnitor was negligent, and that the indemnitor's negligence was the direct, immediate cause of the plaintiff's damages and injuries. See *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 414, 207 A.2d 732 (1965).

In *Schneider* v. *Lockheed Aircraft Corporation,* 658 F.2d 835 (D.C. Cir. 1981), the Circuit Court of Appeals for the District of Columbia was faced with a third party complaint seeking both indemnity and contribution, using tentative and hypothetical language similar to the pleadings in the present case. The court concluded that the statements, made arguendo to discuss the hypothetical legal consequences if a certain fact were found, were not admissions of the fact in question. The court also noted that the statements in question, being purely contingent, could not affect the probability of correctly determining the underlying fact, and were therefore irrelevant. The court cited with approval the rationale for excepting third party pleadings from the general rule of admissibility expressed in *Continental Ins. Co. of New York* v. *Sherman,* 439 F.2d 1294 (5th Cir. 1971): " 'Strictly applied . . . [the general] rule would place a litigant at his peril in [that] . . . the allegations in third-party complaints and cross-claims seeking recovery over in the event of liability in the principal action could be used in that action as admissions establishing liability.' " *Schneider* v. *Lockheed Aircraft Corporation,* supra, 843, quoting *Continental Ins. Co. of New York* v. *Sherman,* supra, 1298.

Similarly, in *Douglas Equipment, Inc.* v. *Mack Trucks, Inc.,* 471 F.2d 222 (7th Cir. 1972), the Court of Appeals considered an allegation in a third party complaint wherein the pleader alleged that *if* it were liable, it would be so only because of an "unreasonably dangerous" condition brought about by the third party defendant. The court found that the trial court was justified in treating the allegation as a hypothetical pleading, rather than as an admission. " 'Alternative fact allegations made in good faith and based on genuine doubt are not admissions against interest so as to be admissible in evidence against the pleader. The pleader states the facts in the alternative because he is uncertain as

to the true facts. Therefore, he is not "admitting" anything other than his uncertainty.' " Id., 224, quoting *McCormick* v. *Kopmann*, 23 Ill. App. 2d 189, 203, 161 N.E.2d 720 (1959).

The trial court did not err in refusing to charge the jury that the statements contained in the third party pleadings could be considered admissions against the interest of the respective defendants. The court was justified in treating these pleadings as alternative or hypothetical pleadings, rather than as admissions.

## II

The plaintiff's next claim is that the court submitted interrogatories to the jury that erroneously omitted the plaintiff's allegation concerning the absence of certain safety devices on the crease and punch machine. Specifically, the plaintiff claims that the interrogatories submitted elicited responses pertaining to the absence of the hand safety guard, and to the lack of warnings or instructions, but did not include an interrogatory requested by the plaintiff regarding his allegation that additional safety devices and various controls required by the Occupational Safety and Health Act (OSHA) were absent.[5]

The court properly refused to give the jury a specific interrogatory as to "the absence of safety devices other than a hand safety guard." The various allegations of the plaintiff regarding his claim of product liability were not distinct causes of action that were entitled to a separate jury interrogatory. Cf. *Hartford* v. *Anderson Fairoaks, Inc.*, 7 Conn. App. 591, 594, 510 A.2d 200 (1986). The allegations, rather, are separate grounds

[5] The plaintiff requested that the court submit a number of questions to the jury which included the following interrogatory:

"2. Was the machine at the time of sale from Craftsman to Beaverite defective and unreasonably dangerous because of the absence of safety devices other than a hand safety guard?"

as to why the crease and punch machine was defective and unreasonably dangerous.[6] The interrogatories submitted to the jury properly presented questions as to whether the machine was "defective" or "unreasonably dangerous," and whether there was a "failure to warn." A separate jury interrogatory on the "absence of safety devices other than the hand guard" would have given that allegation the force and effect of a separate cause of action, rather than of a potential element of a product liability claim. See General Statutes §§ 52-572m through 52-572r.

This is not a situation as presented in *Hartford* v. *Anderson Fairoaks, Inc.*, supra, where the interrogatories submitted to the jury omitted reference to an entire cause of action asserted by the plaintiff. The cause of action presented here, one of strict product liability, was properly presented to the jury in the court's interrogatories.

### III

The plaintiff claims also that the court erred in refusing to have read to the jury the initial response of Craftsman to an interrogatory as well as its subsequent supplemental response. The plaintiff contends that he

---

[6] The court's instructions to the jury illustrate the relationship of these allegations:

"So there are two elements and we will be talking about those in a minute under products liability: that the product was defective, unreasonably dangerous condition, and the second element of products liability, that the defendant Craftsman failed to warn Mr. DeJesus about the machine. So he says that the machine was in a defective and unreasonably dangerous condition because it had been sold and delivered by Craftsman to East Coast without the hand safety guard, which had been designed by the manufacturer, Thomson National Press, for the prevention of injuries similar to what happened to the plaintiff here. *And also, that other safety devices should have been placed on this machine.*" (Emphasis added.)

We also note that the court properly instructed the jury to disregard the allegations of violation of OSHA regulations. There was no evidence as to any OSHA mandated safety devices.

was entitled to put before the jury the response of Craftsman, made in 1984, to this question:

"24. Does the defendant, Craftsman Machinery Company, claim or contend that any failure or defect on the press is due to alterations or changes in the press made after the press left the control and/or ownership of Craftsman Machinery Company or by a person or party other than Craftsman so that the defendant, Craftsman Machinery Company is thereby relieved of any liability for risk of injury or damage caused by the product?" Craftsman responded at that time: "This defendant makes no such claim at this time, but reserves the right to do so in the future." In April, 1986, a few months before trial, Craftsman filed the following supplemental answer to the same interrogatory: "It appears from information on hand that if the hand safety bar was not on the subject press at the time of plaintiff's injuries, then said bar was removed subsequent to the sale of the machine by Craftsman to Beaverite Products, Inc. and that said removal was performed by the employees or agents of Beaverite Products or East Coast Loose Leaf."

The plaintiff claims that the final answer to the interrogatory and the initial response, notwithstanding the reservation, furnish support for his position that the hand safety guard was not on the crease and punch machine at the time it was sold. The plaintiff sought to show that Craftsman's response immediately prior to the trial was inconsistent with its position in 1984.

The court was well within its discretion to preclude the reading of Craftsman's first response to the interrogatory. The court stated: "I think that because they reserved the right that it does not present an inconsistent statement and therefore when they amended it that is the answer that should be read. So I am going to rule that with respect to 24, if you want to put 24

in, then only the supplemental answer can be read, not the prior one."

The initial interrogatory response by Craftsman did not constitute an admission. It was based upon the information available to Craftsman at the time, and specifically reserved the right to be amended, if new information was later discovered. After discovery was completed, the answer was amended to allege that the hand safety guard had been removed. This amendment was within the bounds of proper procedure. See Practice Book §§ 222 through 225.

In any event, although an answer to an interrogatory generally has the same effect as a judicial admission made in a pleading or in open court, it is not conclusive as to the burden of the opposing party of proving the fact admitted, and will not prevail over evidence offered at trial. *Piantedosi* v. *Floridia*, 186 Conn. 275, 278, 440 A.2d 977 (1982); *Bochicchio* v. *Petrocelli*, 126 Conn. 336, 339, 11 A.2d 356 (1940); *Rogers* v. *Delfino*, 13 Conn. App. 725, 727, 539 A.2d 156 (1988). The question of the lack of a hand safety guard was raised at trial. Indeed, Craftsman explained its changed answer to the court. The court did not err in choosing to read only the subsequent response to the jury.

## IV

The plaintiff claims also that the jury's response to the interrogatories required that the trial court set aside the verdict and render judgment in his favor as to Craftsman's liability. We find this claim unavailing.

In reviewing the court's denial of a motion to set aside the verdict, and for judgment notwithstanding the verdict, this court considers evidence in the light most favorable to the party obtaining the verdict. *State* v. *Nicoletti*, 8 Conn. App. 351, 355, 512 A.2d 235 (1986); *Robben* v. *Hartford Electric Light Co.*, 1 Conn. App.

109, 112, 468 A.2d 1266 (1983). If the jury could reasonably have reached its conclusion, the verdict must stand. *Robben* v. *Hartford Electric Light Co.,* supra. "Moreover, each ruling of the trial court on the post-verdict motions is entitled to great weight. *Hearl* v. *Waterbury YMCA,* 187 Conn. 1, 3, 444 A.2d 211 (1982). The trial judge can sense the atmosphere of a trial and has an excellent vantage point for evaluating the factors that may have brought the jury to its verdict. Id." *Robben* v. *Hartford Electric Light Co.,* supra.

When it is alleged that answers to interrogatories conflict with a general verdict so as to justify rendering a judgment contrary to the general verdict, " 'those answers must be such in themselves as conclusively *to show that as a matter of law judgment could only be rendered for the party against whom the general verdict was found;* they must negative every reasonable hypothesis as to the situation provable under the issues made by the pleadings; and in determining that, the court may consider only the issues framed by the pleadings, the general verdict and the interrogatories, with the answers made to them, without resort to the evidence offered at the trial.' (Emphasis added.) [*Belchak* v. *New York, N. H. & H. R. Co.,* 119 Conn. 630, 634, 179 A. 95 (1935)]." *Murteza* v. *State,* 7 Conn. App. 196, 201, 508 A.2d 449 (1986).

Applying these standards to the claim before us, we cannot say that the answer in question requires a judgment in the plaintiff's favor as to the liability of Craftsman. The plaintiff argues that the jury's positive answer to the fourth interrogatory, which inquired whether the plaintiff "prove[d] that the machine was defective in that adequate warnings were not provided," demonstrates that the jury "specifically found that the machine was defective because Craftsman failed to warn that the absence or removal of the hand

safety guard created a dangerous condition for the machine operator.'' We do not agree.

Our reading of the plaintiff's complaint, together with the jury's answers to the interrogatories relative to this claim against Craftsman,[7] convinces us that the jury concluded that although the safety bar was missing from the crease and punch machine, it was not necessarily missing when the machine left the possession of Craftsman. General Statutes § 52-572p (a) provides that ''[a] product seller shall not be liable for harm that would not have occurred but for the fact that his product was altered or modified by a third party .. . . .''

In addition, although the jury found that the machine was defective because it did not have adequate warnings on it, the jury expressly found in its answer to question five that this lack of warning was not a proximate cause of the plaintiff's injuries. ''[T]he claimant shall prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, the claimant would not have suffered the harm.'' General Statutes § 52-572q (c).

The plaintiff was not entitled to judgment in his favor regarding the liability of Craftsman based on the jury's answer to the interrogatory in question. The court did not err in denying the plaintiff's motion to set aside the verdict and impose liability on Craftsman on this basis.

V

Finally, the plaintiff claims that the court erred in concluding that Craftsman produced sufficient evidence to overcome the presumption of proximate cause which, according to the plaintiff, was created by proof of Craftsman's failure to provide adequate warnings on

[7] See footnote 4, supra.

the crease and punch machine. This argument is untenable.

The plaintiff, the claimant herein, acknowledges that General Statutes § 52-52q (c) specifically places upon him the burden of proving proximate cause, but then argues that the statute is vague by not providing guidelines as to how a claimant can satisfy this burden. Section § 52-572q (b) provides that "[i]n determining whether instructions or warnings were required and, if required, whether they were adequate, the trier of fact may consider: (1) The likelihood that the product would cause the harm suffered by the claimant; (2) the ability of the product seller to anticipate at the time of manufacture that the expected product user would be aware of the product risk, and the nature of the potential harm; and (3) the technological feasibility and cost of warnings and instructions."

The language of the statute is clear. There was no presumption of proximate cause that arose on the jury's finding that Craftsman had failed to provide adequate warnings on the crease and punch machine.

There is no error.

In this opinion the other judges concurred.