[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
On April 16, 1990, the plaintiff, Howard Hoey, filed a one-count complaint against the defendants, Textron, Inc. and Stanley-Bostitch, Inc. The complaint alleges that on May, 21, 1987, the plaintiff was operating an industrial staple gun, called a T-5 tacker [hereafter "the staple gun"], that was manufactured and distributed by the defendants and that the plaintiff suffered significant and permanent injuries to his right eye when a stack of staples spontaneously ejected from the staple gun as the plaintiff was attempting to clear a jammed staple.
This action was brought pursuant to the product liability statute, Conn. Gen. Stat. 52-572m et seq. The plaintiff has alleged the staple gun was in a defective and unreasonably dangerous condition, that it contained a design defect, that the defendants failed to warn of the staple gun's dangers or provide adequate instructions, that the defendants misrepresented that the staple gun was safe for public use, that the defendants negligently failed to adequately test the staple gun and continued to manufacture and distribute it without altering its unsafe design or providing adequate warnings, that the defendants breached implied and express warranties of merchantability and fitness, and that the defendants exhibited reckless disregard for the safety of product users including the plaintiff.
The defendants filed an answer on July 13, 1990 and an amended answer and six special defenses on October 12, 1991.[1] The six special defenses are the statute of limitations, third-party CT Page 8571 liability, comparative responsibility, collateral source compensation, the plaintiff's misuse of the tool, and assumption of the risk. The amended answer either denies material allegations of the plaintiff's complaint or leaves the plaintiff to his proof.
On April 28, 1993, the defendants filed a motion for summary judgment (#122), a supporting memorandum (#123) and copies of two depositions. On June 24, 1993, the plaintiff filed an objection to the defendants' motion (#124), a memorandum in opposition (#125), an affidavit and copies of two depositions.[2]
The motion for summary judgment, as amplified by the supporting memorandum of law, presents four grounds upon which the defendants assert that they are entitled to judgment as a matter of law: the plaintiff's misuse of the staple gun, the plaintiff's assumption of the risk by knowingly using the staple gun in a defective condition, the lack of any duty to warn and the failure of plaintiff's employer to provide him with safety glasses.[3] The plaintiff has responded that there are genuinely disputed material facts as to each of these claims that require the court to deny the motion for summary judgment.
Summary judgment is appropriate only if the pleadings and other proof submitted in connection with the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book 384. The burden is on the moving party to show "the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. [Citation omitted.]." Dougherty v. Graham, 161 Conn. 248,250, 287 A.2d 382 (1971).
 Hence, the "genuine issue" aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred. [Citations omitted]. A "material fact" has been defined adequately and simply as a fact which will make a difference in the result of the case. [Citation omitted]. "Issues of CT Page 8572 fact" encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them. [Citations omitted] . . . . summary judgment is to be denied where there exist "genuine issues of fact and inferences of mixed law and fact to be drawn from the evidence before the Court." [Citations omitted].
United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 378 — 79, 260 A.2d 596 (1969). The court must consider the evidence in the light most favorable to the nonmovant, Catz v. Rubenstein, 201 Conn. 39, 49, 513 A.2d 98 (1986), who must be "given the benefit of all favorable inferences that can be drawn." United Oil Co. v. Urban Redevelopment Commission,158 Conn. at 380.
I. Misuse
Product misuse is a defense to an action brought pursuant to Conn. Gen. Stat. 52-572m, although it is not a complete bar to recovery "where the misuse played only a contributing role in the plaintiff's injuries." Elliot v. Sears, Roebuck Co., 30 Conn. App. 664,671, 621 A.2d 1371 (1993) See Norrie v. Heil Co.,203 Conn. 594, 600, 525 A.2d 1332 (1987), citing Conn. Gen. Stat. 52-5721.[4]
 In a product liability claim, the defense of product misuse arises when a product is used in a manner that should not have been reasonably foreseen by the defendant. Norrie v. Heil Co., 203 Conn. 594, 600, 525 A.2d 1332
(1987); Hoelter v. Mohawk Services, Inc., [170 Conn. 495], 517 [365 A.2d 1064 (1976)]. "The concept of misuse concerns an issue of causation and provides a complete defense to liability, regardless of any defective condition, if an unforeseeable and unintended use of the product, and not the alleged defect, caused the plaintiff's injuries." (Emphasis in original.) States v. R. D. Werner Co., Inc., 799 P.2d 427, 429
(Colo.App. 1990). CT Page 8573
Elliot v. Sears, Roebuck Co., 30 Conn. App. at 670.
The defendants assert that the plaintiff misused the staple gun in a number of different ways including opening the staple gun to see if he could clear the jam and looking directly at the cartridge while doing so instead of pointing the cartridge away from his body, never reading the instructions and warnings that came with the product which included specific instructions on how to clear a jammed staple, and not wearing safety glasses at the time he used the staple gun. See Memorandum of Law in Support of Defendants' Motion for Summary Judgment [hereafter "Defendants' Memorandum"] pp. 7 — 10.
In response, the plaintiff has claimed that the staples would frequently become jammed in the product, that all insulators attempted to clear jams in the same manner that he did on May 21, 1987, that he had cleared jammed staples in the same manner for thirteen years, that he had never experienced staples flying out of the cartridge previously and never had heard of anyone else who had experienced flying staples when attempting to clear a jam, and that he assumed that if the staple gun's release mechanism was locked in place, staples would not fly out of the cartridge. Further, the plaintiff asserts that he never received training or instructions from any source about loading staples or clearing jammed staples, that he never saw any warnings suggesting the use of safety glasses and that his employer did not require him to wear safety glasses. See Plaintiff's Objection to the Defendants' Motion for Summary Judgment [hereafter "Plaintiff"s Objection] Exhibit A, Affidavit of Howard Hoey.
To prevail on the defense of product misuse, the defendants will have to establish that the staple gun was misused, that the misuse was not foreseeable and that the misuse was the proximate cause of the plaintiff's injuries. Facts material to each of these elements are in dispute. Furthermore, generally speaking, questions of proximate cause and foreseeability are best left to the jury. See e.g., Tetro v. Stratford, 189 Conn. 601, 605,485 A.2d 5 (1983); Coburn v. Lenox Homes, Inc., 186 Conn. 370, 383,441 A.2d 620 (1982). Proximate cause, and likewise foreseeability, should be decided as a matter of law "only when the mind of a fair and reasonable [person] could reach only one conclusion." Trzcinski v. Richey, 190 Conn. 285, 295, 460 A.2d 1269 (1983) quoting Marley v. New England Transportation Co., 133 Conn. 586,591, 53 A.2d 296 (1947). This cannot be done in this case. CT Page 8574
II. Assumption of the Risk
In their second ground in support of their motion for summary judgment the defendants assert, based on their characterization of the plaintiff's deposition testimony, see Defendants' Memorandum pp. 13 — 15, that the plaintiff is barred from recovery because he knew of the potential hazards associated with the staple gun at the time of the accident and voluntarily proceeded to subject himself to these potential hazards. However, a genuine issue of fact appears to exist as to whether the plaintiff knowingly and voluntarily assumed the risk of using the staple gun in a defective condition.
 "[K]nowingly using the product in a defective condition" has been defined narrowly. It is "narrower than the common-law defense of assumption of the risk, which bars recovery when a person knows or as a reasonable person should know that in pursuing a certain course he will expose himself to the risk of injury, comprehends or ought as a reasonable person to comprehend the nature and extent of the risk and voluntarily subjects himself to it. Nally v. Charbonneau, 196 Conn. 50, 53, 362 A.2d 494 (1975)." (Emphasis in original.) Kelly v. Deere Co., 627 F. Sup. 564, 565 (D. Conn. 1986). In other words, the risk must be assumed knowingly and voluntarily. Mere negligence will not be sufficient to deny recovery.
Norrie v. Heil Co., 203 Conn. at 600.
In his affidavit submitted in opposition to the defendants' motion, the plaintiff has stated that "[p]rior to the incident . . . I had never experienced staples flying or shooting out of the chamber of the tacker when I attempted to clear jammed staples . . . [and] I had never heard of anyone else experiencing staples flying out of the chamber when there was an attempt to clear a jammed tacker." The plaintiff assumed that "staples would not shoot or fly unexpectedly from the cartridge if the release mechanism was locked in place" and reasonably relied upon that fact. Furthermore, the plaintiff has explained that he was holding the staple gun "so that I could see the area . . . in which the CT Page 8575 staples were jammed [and] so that if any staples were accidently shot out of the ejection area . . . they would shoot away from my body." See Plaintiff's Objection, Exhibit A.
Drawing all inferences in favor of the nonmovant, as the court is required to do, it appears that while the plaintiff was aware of the risk of staples accidentally firing out of the ejection area of the staple gun, he was not aware of the risk that staples would spontaneously fly out of the cartridge area. See Plaintiff's Objection, Exhibit B, pp. 26-29. Therefore, there are disputed material facts and the court cannot conclude that the defense of knowingly using a product in a defective condition has been established as a matter of law.
III. Duty to Warn
Section 52-572q provides for liability upon proof "that adequate warnings or instructions were not provided" and that the lack of warnings or instructions were a proximate cause of the plaintiff's injury. Conn. Gen. Stat. 52-572q(a), (c). See Giglio v. Connecticut Light and Power Co., 180 Conn. 230, 235,429 A.2d 486 (1980). Section 52-572q (b) provides that:
 [i]n determining whether instructions or warnings were required and, if required, whether they were adequate, the trier of fact may consider: (1) The likelihood that the product would cause the harm suffered by the claimant; (2) the ability of the product seller to anticipate at the time of manufacture that the expected product user would be aware of the product risk, and the nature of the potential harm; and (3) the technological feasibility and cost of warnings and instructions.
See DeJesus v. Craftsman Machinery Co., 16 Conn. App. 558, 574,548 A.2d 736 (1988). This standard provides the trier of fact with broad latitude in characterizing evidentiary facts and the court should not, on a motion for summary judgment, draw those inferences and conclusions that must be drawn by the trier of fact. See United Oil Co. v. Urban Redevelopment Commission, 158 Conn. at 379.
 The established rule in this jurisdiction is that "[a] product may be defective because a CT Page 8576 manufacturer or seller failed to warn of the product's unreasonably dangerous propensities." Tomer v. American Home Products Corporation, 170 Conn. 681, 689, 368 A.2d 35
(1976); see also General Statutes 52-572q; Giglio v. Connecticut Light Power Co., 180 Conn. 230, 235, 429 A.2d 486 (1980); 2 Restatement (Second), Torts 402A. Under such circumstances, the failure to warn, by itself, constitutes a defect. See Giglio v. Connecticut Light Power Co., supra, 236; Prosser, Torts (4th Ed.) 99, p. 659.
Ames v. Sears, Roebuck Co., 8 Conn. App. 642, 645,514 A.2d 352 (1986).
Relying on certain federal cases the defendants argue, however, that they had no duty to warn a sophisticated user such as the plaintiff of a known and obvious danger. See Argubright v. Beech Aircraft Corp., 868 F.2d 764 (5th Cir. 1989); Hall v. Ashland Oil Co., 625 F. Sup. 1515 (D. Conn. 1986). These opinions are not premised on Connecticut law[5] and are not binding on this court. Further, as discussed in II, above, the plaintiff disputes that he was aware of the danger of staples spontaneously flying or shooting out of the staple gun's cartridge when the locking mechanism was in place. "Warnings must specifically identify for the user the danger inherent in the product's use." Giglio v. Connecticut Light and Power Company, 180 Conn. at 237. Whether that was done in this case presents a disputed factual question to be resolved by the trier of fact.
For the foregoing reasons the court finds that there are genuine issues of material fact with respect to all the grounds defendants have raised. Accordingly, the defendants' motion for summary judgment is denied.